UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

DAM THIEU HUYNH,

      Petitioner,

v.                                                                              No. 1:26-CV-006-H

KRISTI NOEM, et al.,

      Respondents.

## ORDER

Before the Court is Dam Thieu Huynh's motion for a temporary restraining order and preliminary injunction. Dkt. No. 10. Huynh asks the Court to enjoin the respondents from removing him to a different detention facility "unless it is to move him closer to his home," and to enjoin the respondents from removing Huynh from the United States until the Court resolves his habeas petition. Dkt. No. 10-1 at 1.

The motion (Dkt. No. 10) is denied. Huynh cannot show a significant likelihood of success on the merits as to the INA and Due Process claims raised in his TRO, his objection to removal, and his request to not be transferred to a different facility.

## 1.    Background

Huynh is a native and citizen of Vietnam. Dkt. No. 1 ¶ 2. He entered the United States in 1983 as a refugee. *Id.* ¶ 3. He became a lawful permanent resident in 1985. Dkt. No. 10-1 at 1. However, in 1998, an immigration judge ordered Huynh's removal. *Id.* at 2; Dkt. No. 1 ¶ 3. Ostensibly, Huynh was ordered removed to Vietnam. He remained in immigration detention for over six months before he was released on an order of supervision (OSUP). *Id.* The TRO suggests, and the Court has no reason to doubt, that this failure came about from Vietnam's refusal to issue travel documents. *See* Dkt. No. 10-1 at 2;

*Nguyen v. Noem*, 797 F. Supp. 3d 651, 658 (N.D. Tex. 2025) (*Nguyen v. Noem*) (noting that, until recently, removal of Vietnamese aliens who had entered the United States before 1995 was "generally unlikely") (quotation omitted).

For the next 25 years, Huynh complied with his OSUP and always attended his check-ins with ICE.  Dkt. No. 10-1 at 2.  But on December 8, 2025, when Huynh went to his annual check-in in Dallas, ICE agents detained him and transferred him to the Bluebonnet Detention Center in Anson, Texas, where he has remained since.  *Id.*

On January 5, 2026, Huynh filed a habeas petition.  Dkt. No. 1.  The habeas petition alleges that Huynh's detention violates the Fifth Amendment's Due Process Clause because (1) his re-detention after already being detained for over six months in 1999 violates *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (2) there is no significant likelihood of removal to Vietnam in the reasonably foreseeable future.  Dkt. No. 1 ¶¶ 40–45.  The petition also alleges that the respondents' detention policy violates the INA and its implementing regulations.  *Id.* ¶¶ 46–51.[1]

The Court issued an order requiring the respondents to show cause why Huynh's petition should not be granted.  Dkt. No. 4.  The Court gave the respondents 20 days to file their answer.  *Id.* at 1.  In many removal cases, the respondents offer a notice indicating that removal will not occur without the respondents offering three days' notice to the Court before effectuating removal.  *See Gallego Osorio v. Villegas*, No. 1:25-CV-293, Dkt. No. 14 at 2–3 (N.D. Tex. Jan. 6, 2026).  Here, however, the respondents make no such assurance and inform the Court that they will only notify the Court if Huynh is removed, thereby mooting

---

[1] Inexplicably, Huynh also alleges that his detention violates "the First, Fourth, . . . and Fourteenth Amendments."  Dkt. No. 1 ¶ 16.  Since he does not develop those assertions in his TRO motion, the Court will not consider these claims.

his petition.  Dkt. No. 7 at 2 n.3.  At this time, the respondents have not yet answered

Huynh's petition, and litigation remains underway.

On January 9, 2026, Huynh filed the instant motion for a TRO or preliminary

injunction.  Dkt. No. 10.

## 2.      Legal Standard

Federal Rule of Civil Procedure 65 authorizes courts to issue temporary restraining

orders and injunctions.  A temporary restraining order, or TRO, is "simply a highly

accelerated and temporary form of preliminary injunctive relief."  *Hassani v. Napolitano*,

No. 3:09-CV-1201, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009).  Thus, the party

seeking a TRO or preliminary injunction must satisfy the same four-factor standard for

preliminary injunctive relief.  *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 645 (N.D.

Tex. 2021).  The party seeking relief must show (1) a substantial likelihood of success on the

merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the

movant's favor; and (4) issuing the injunction will not disserve the public interest.  *Daniels*

*Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

A TRO, like any injunction, is an "extraordinary remedy."  *Lewis v. S.S. Baune*, 534

F.2d 1115, 1121 (5th Cir. 1976).  "The decision to grant [such relief] 'is to be treated as the

exception rather than the rule.'"  *Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000)

(quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir.

1985)).  To prevail, the movant "must satisfy a cumulative burden of proving each of the

four elements" for injunctive relief.  *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987).

"Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot

– 3 –

grant the TRO or preliminary injunction." *Speed v. America's Wholesale Lender*, No. 3:14-CV-3425, 2014 WL 4755485, at *1 (N.D. Tex. Sept. 24, 2014) (emphasis in original).

### 3.   Analysis

Huynh fails to demonstrate a substantial likelihood of success on the merits, which is fatal to his motion for a TRO and preliminary injunction.  The Court recognizes that Huynh's habeas petition raises additional arguments that were not included in his emergency motion for TRO or preliminary injunction.  Given the need to resolve the motion on an accelerated timeline, the Court will address all other arguments when resolving Huynh's habeas petition (Dkt. No. 1), which remains pending.

### A.   Huynh's challenge to whether ICE complied with their internal procedures fails.

#### i.   Huynh fails to show that the respondents violated their internal procedures.

Huynh states that ICE "regulations set out a procedure where [an alien] would be notified of the reasons for revocation of his release, including an initial informal interview, submission of evidence, and an evaluation of the contested facts relevant to the revocation." Dkt. No. 1 ¶ 38.  *See* 8 C.F.R. §§ 241.4(l), 241.13(f), (i)(3); *Nguyen v. Noem*, 797 F. Supp. 3d at 660.  But the respondents are entitled to a "presumption of regularity" that requires the Court to "presume" that the respondents "have properly discharged their official duties." *Nguyen v. Noem*, 797 F. Supp. 3d at 662 (citing *United States v. Armstrong*, 517 U.S. 456, 464 (1996); *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001)).  In a habeas proceeding, the petitioner "bears the burden of displacing the presumption" by offering factual support to the contrary.  *Id.* (citing *Bute v. People of State of Ill.*, 333 U.S. 640, 671 (1948)).  Neither party has offered a sworn affidavit or other evidence to indicate that Huynh was denied a hearing

under Section 241.13(i)(3) or denied any other procedural protections. He has thus failed to

demonstrate a likelihood of success. *See id.*

      **ii.**      **Even assuming that the respondents did not follow their internal procedures, Huynh would not be entitled to habeas relief because any error was harmless.**

"Harmless error applies in immigration cases generally." *Nguyen v. Noem*, 797 F.

Supp. 3d at 662 (citations omitted). And under a harmless-error analysis, Huynh bears the

burden of demonstrating prejudice. *City of Arlington v. FCC*, 668 F.3d 229, 243–44 (5th Cir.

2012). Despite the expedited timeline of these proceedings, Huynh has so far received

notice of his impending removal and a limited opportunity to respond to the government's

notice and present information challenging the grounds for his removal. *See Ladak v. Noem*,

___ F. Supp. 3d ___, 2025 WL 3764016, at *5 (N.D. Tex. Dec. 30, 2025). "Because habeas

is not backward-looking, the process provided now" is sufficient enough that it is unlikely

Huynh can use habeas to secure forward-looking relief. *Id.* (citing *Walker v. Wainright*, 390

U.S. 335, 336 (1968); *Lane v. Williams*, 455 U.S. 624, 631 (1982)).

      **B.**      **Huynh's due-process claim fails.**

      **i.**      **Huynh's re-detention does not change the Court's analysis under *Zadvydas*.**

Huynh's TRO asserts that *Zadvydas*'s burden-shifting framework does not govern

cases of re-detention. Dkt. No. 10-1 at 4. More specifically, Huynh seems to argue that the

onus is on the government from the very beginning to justify re-detention on a higher level

than before. *See id.* (citing *Yan-Ling X. v. Lyons*, No. 1:25-CV-1412, 2025 WL 3123793, at *5

(E.D. Cal. Nov. 7, 2025) (asserting that "[a]n undue delay in removal for an individual alien

beyond the typical removal period would naturally suggest that removal is unlikely")

(quotation omitted)).

This argument has two conclusions.  The first is a line of reasoning adopted in *Tadros v. Noem* and other cases, which concludes that third-country removal is unlikely where years have elapsed since the last removal attempt.  No. 25-CV-4108, 2025 WL 1678501, at *1 (D.N.J. June 13, 2025); *see Yan-Ling*, 2025 WL 3123793, at *5 (reaching the same conclusion).[2]  The second is that re-detention works on a sliding scale to require the respondents to offer ever-higher levels of proof that removal is significantly likely in the reasonably foreseeable future.  *See Ladak*, 2025 WL 3764016, at *9.

The first line of reasoning is unpersuasive, even were the Court to agree that, in effect, Huynh's detention period should run as seven months rather than one.  The Court previously addressed *Tadros* and similar cases in *Surovtsev v. Noem*, No. 1:25-CV-160, 2025 3264479 (N.D. Tex. Oct. 31, 2025).  There, the Court declined to adopt *Tadros*'s reasoning, observing that the court in that case "fail[ed] to account for the new administration's well-known sea change" in removing individuals to third countries with far greater frequency than before, and that, "[i]n essence," such reasoning impermissibly "turn[s] back the clock to what could have been done before January 20, 2025" without considering the changed circumstances that came after.  2025 WL 3264479, at *8 & n.9.  For the same reasons, the Court is unpersuaded.

The second line of reasoning is even less persuasive.  It is true that, as a period of detention continues without success, courts are rightly skeptical of the government's basis for continued detention and may demand additional evidence if the government fails to

---

[2] *See also Douglas v. Baker*, No. 25-CV-2243, 2025 WL 2997585, at *4 (D. Md. Oct. 24, 2025); *S.F. v. Bostock*, No. 3:25-CV-1084, 2025 WL 2841022, at *4 (D. Or. Oct. 7, 2025); *Zavvar v. Scott*, Civ. A. No. 25-2104, 2025 WL 2592543, at *7 (D. Md. Sept. 8, 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. 2025) (*Nguyen v. Scott*).

make good on its plans for removal. *E.g.*, *Agbada v. Ashcroft*, Civ. A. No. 02-30098, 2002 WL 1969660, at *1 (D. Mass. Aug. 22, 2002) (ordering removal or provision of removal confirmation within 90 days of the court's order). This Court has done so in other cases. *See Yaghoubi Yeganeh v. Warden, Bluebonnet Detention Facility*, No. 1:25-CV-121, Dkt. No. 18 at 2 (N.D. Tex. Nov. 12, 2025) (granting the respondents "a final opportunity" to detail third-country removal efforts after prolonged detention).

But the reality is that Huynh was detained one month ago in December. Dkt. No. 1 ¶ 25. It defies reality to construe his situation as otherwise, because the probable reasons for his re-detention—new travel documents or the potential for third-country removal—are only salient now. *Surovtsev*, 2025 WL 3264479, at *8 (rejecting a *Tadros* claim on similar grounds); *Nguyen v. Noem*, 797 F. Supp. 3d at 668–69 (noting the United States' new removal policy with Vietnam for aliens who entered before 1995). Even courts that adopt Huynh's position acknowledge that *Zadvydas* does not require continuous counting. *Nguyen v. Scott*, 796 F. Supp. 3d at 721–22; *Chen v. Holder*, No. 6:14-CV-2530, 2015 WL 13236635, at *2 (W.D. Nov. 20, 2015). Rather, these courts count time in detention all together to prevent the undesirable consequence of permitting the government to detain someone, "release[] him from detention, and then re-detain[] him again," creating an indefinite cycle of detention that would violate the spirit of *Zadvydas*. *Nguyen v. Scott*, 796 F. Supp. 3d at 721–22 (collecting cases) (quoting *Sied v. Nielsen*, No. 17-CV-6785, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018)).

The fear that the government might abuse re-detention is understandable, but the Court is unpersuaded. ICE is not the only governmental entity that engages in re-detention:

state and federal courts routinely revoke pretrial release, parole, and supervised release.[3]

Yet none of these are subject to a rising tide of evidentiary burdens. To the contrary: federal

pretrial detention and revocation of supervised release are subject to evidentiary standards

far more forgiving than that of their centerpiece—a trial conviction with proof beyond a

reasonable doubt. *See United States v. Roberson*, 547 F. Supp. 3d 560, 563–64 (N.D. Tex.

2021) (applying, at most, a preponderance-of-the-evidence standard in pretrial release

revocations); *Johnson v. United States*, 529 U.S. 694, 700 (2000) (applying preponderance

standard to supervised release revocations). It does not follow that American citizens can

be subjected to a more relaxed standard of review for the re-detention process than the

original detention process, yet aliens re-detained subject to an order of removal should

receive a *higher* level of process by means of greater proof of the alien's likelihood of

removal in the reasonably foreseeable future. *See Landon v. Plasencia*, 459 U.S. 21, 32–33

(1982) (noting that aliens are typically due less process than citizens); *DHS v. Thuraissigiam*,

591 U.S. 103, 138–39 (2020) (same).

Moreover, *Zadvydas* already provides a clear balance at the outer bounds of federal

authority by ensuring aliens are only detained for "a period reasonably necessary to bring

about [the] alien's removal from the United States." 533 U.S. at 689. Both initial detention

and re-detention are united in this purpose, and the limit—that neither may result in

indefinite detention or detention without a significant likelihood of removal in the

reasonably foreseeable future—already polices the government from unconstitutional

action. *See Ladak*, 2025 WL 3764016, at *10 (reaching the same conclusion).

---

[3] *E.g.*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (pretrial detention); *Morrison v. Johnson*, 106 F.3d 127 (5th Cir. 1997) (revocation of parole); *United States v. Tippens*, 39 F.3d 88 (5th Cir. 1994) (procedural rights for persons subject to revocation of supervised release).

There may be cases where the government cannot show a reasonable likelihood of removal at the time of re-detention, fails to produce any such evidence, and engages in repeat or periodic re-detentions of an alien despite failing to cure these deficiencies. That narrowly defined scenario would raise the concern of an indefinite cycle of detention. But it is far from likely that such a situation is before the Court now. Huynh's demand for an injunction preventing his removal would suggest the exact opposite is true: that this is his final detention in a U.S. immigration facility before removal to Vietnam or a third country. Thus, the Court finds that Huynh has not demonstrated a likelihood of success on his due-process claim.

> ii.      **Because Huynh has not demonstrated that his removal in the reasonably foreseeable future is less than significantly likely, *Zadvydas* permits his detention.**

To the extent Huynh argues that he is not a flight risk or danger to the community, and his release is therefore warranted (*see* Dkt. No. 1 ¶ 32–33), his claim is unpersuasive. As the Court explained in *Ladak*, "[b]ecause 'the *Zadvydas* standard *is* due process,' [an alien] is deprived of no liberty by his detention anticipating removal consistent with the protections set forth" in *Zadvydas*, even if he is not a flight risk or danger to the community. 2025 WL 3764016 at *11 (quoting *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (emphasis in original)).

> C.      **Huynh has not demonstrated the significant likelihood of success necessary to secure emergency injunctive relief preventing his transfer or removal.**

Finally, without explanation, Huynh demands that the respondents cease any effort to transfer him to a different detention facility (unless it is one closer to home) or to remove him from the United States. *See* Dkt. No. 10-1 at 1. The contention is a strange one, as Huynh's own habeas petition argues that his removal is not significantly likely in the

reasonably foreseeable future.  *See* Dkt. No. 1 ¶ 44.  And arguing that such removal *is* likely would suggest habeas relief on the merits of his claim is inappropriate.

Even so, Huynh has not met the high bar for emergency relief.  "[H]e has no 'right . . . to remain in a foreign country."  *Ladak*, 2025 WL 3764016, at *11 (quoting *Thuraissigiam*, 591 U.S. at 122).  As such, he cannot use the writ of habeas corpus to prevent the respondents from seeking his removal except on those grounds that are authorized by statute (and not asserted here).  *See Thuraissigiam*, 591 U.S. at 120 (rejecting the contention that habeas corpus "guarantees a broader habeas right" to remain).

Finally, "the respondents have broad discretion to determine where an alien is detained, as well as when and whether the alien should be moved."  *Gallego Osorio*, No. 1:25-CV-293, Dkt. No. 14 at 8.  "Courts should not be micromanaging this issue."  *Candido v. Bondi*, No. 25-CV-867, 2025 WL 3123696, at *2 (W.D.N.Y. Nov. 7, 2025) (emphasis omitted).  Indeed, courts have concluded that they lack jurisdiction to enjoin the government from transferring immigration detainees to other judicial districts, as those decision are committed to the Attorney General's discretion.  *See, e.g.*, *Marquez-Diaz v. Ripa*, No. 25-CV-23256, 2025 WL 2061675, at *3 (S.D. Fla. July 22, 2025) (collecting cases). The Court sees no good reason to deviate from those decisions.

4.    **Conclusion**

Because Huynh fails to show a substantial likelihood of success on the merits, the Court denies his motion for TRO or preliminary injunction (Dkt. No. 10).  The habeas petition (Dkt. No. 1) remains pending.

So ordered on January 10, 2026.

_____

JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE