UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| DAM THIEU HUYNH,<br><br>    Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>    Respondents. | No. 1:26-CV-006-H |

## **ORDER**

    Dam Thieu Huynh is in ICE custody to enforce an indisputably valid order of removal issued against him in 1998 after he was convicted of an aggravated felony. Upon being re-detained in 2025 after a failed removal in 2014, he seeks habeas relief. In support, he asserts that the respondents failed to provide him the required notice, interview, and opportunity to respond. But even assuming the alleged procedural violations occurred, any error was harmless given the expanded procedure that Huynh has received throughout this case, and, in any event, a writ of habeas corpus would not be the appropriate remedy.

    Additionally, Huynh insists that his re-detention violates the INA, its implementing regulations, and the Due Process Clause of the Fifth Amendment because there is no significant likelihood of his removal in the foreseeable future and because there are no changed circumstances to merit his re-detention. But the United States' recent change of immigration policy with Vietnam, along with ICE's efforts in Huynh's individual case, suggests otherwise. Finally, Huynh also raises three claims arising under the First, Fourth, and Fourteenth Amendments, which are frivolous. As detailed below, the Court denies Huynh's habeas petition (Dkt. No. 1).

1.   **Background**

    A.   **Factual Allegations and Evidence**

Huynh entered the United States as a refugee in 1983. Dkt. No. 1 ¶ 23. At some point after arriving, Huynh committed an aggravated felony. Dkt. No. 17 at 3.[1] Following his conviction, an Immigration Judge ordered Huynh removed. *See* Dkt. No. 16 at 9. Pursuant to that order, the government detained Huynh and attempted to remove him to Vietnam. Dkt. No. 1 ¶¶ 3, 6. The Vietnamese government did not respond to Huynh's travel document requests, and so the removal attempt failed. *Id.*; *see Nguyen v. Noem*, 797 F. Supp. 3d 651, 658 (N.D. Tex. 2025) (*Nguyen v. Noem*) (noting that, until recently, the United States and Vietnam did not have "a process for repatriation of Vietnamese nationals who had arrived in the United States [before] July 12, 1995"). After a period of detention,[2] the government released Huynh on an Order of Supervision (OSUP). Dkt. No. 1 ¶ 3.

ICE re-detained Huynh during a routine check-in at the Dallas Field Office in December 2025. Dkt. Nos. 1 ¶ 4; 16 at 6. The government asserts that it has been actively pursuing his removal to Vietnam. *See* Dkt. No. 16 at 6–7. Specifically, the government has recently prepared a travel document request for Huynh in anticipation of submitting that document to the Vietnamese government. *Id.* at 7. Huynh is detained at the Bluebonnet Detention Facility in Anson, Texas. Dkt. No. 1 ¶ 4.

Attached to Huynh's reply brief are several exhibits: a sworn affidavit from Huynh (Dkt. No. 17-1), the 2020 Memorandum of Understanding between the United States and

---

[1] The parties do not describe the nature of that crime, but Huynh admits he has also since been convicted of "additional misdemeanor[s]." Dkt. No. 17 at 3.

[2] The parties disagree over the length of Huynh's original detention. *Compare* Dkt. Nos. 1 ¶ 3 ("over 180 days"); 17-1 at 3 ("a little over one year"), *with* 16 at 6 ("four months").

Vietnam (Dkt. No. 17-2), and documents relating to his removal and original detention (Dkt. No. 17-3).

### B. Procedural Background

On January 5, 2026, Huynh filed a petition for a writ of habeas corpus in this Court. Dkt. No. 1. That same day, the Court ordered the respondents to show cause why Huynh's writ should not be granted. Dkt. No. 4. Four days later, Huynh moved for a temporary restraining order (Dkt. No. 10), which the Court denied (Dkt. No. 11). The respondents filed their response on January 26. Dkt. Nos. 15; 16. Huynh filed his reply on February 9. Dkt. No. 17. The habeas petition is ripe for review.

## 2. Legal Standards

Ordinarily, the government must remove an alien within 90 days of the final order of removal or else release him subject to supervision. 8 U.S.C. § 1231(a)(3). However, Section 1231(a)(6) provides that certain aliens "may be detained beyond the removal period." In *Zadvydas v. Davis*, the Supreme Court interpreted Section 1231(a)(6) to determine how long the government may detain an alien pending removal under this Section. 533 U.S. 678, 682 (2001). The Court first determined that challenges to detainment under this provision are available under 28 U.S.C. § 2241, which is the basis of Huynh's habeas petition. *See id.* at 688; Dkt. No. 1 ¶ 12. Turning to the merits, the Supreme Court concluded that the government may not detain indefinitely aliens under this provision. *Zadvydas*, 533 U.S. at 699. Doing so would violate due process because such long-term detention requires "a criminal proceeding with adequate procedural protections." *Id.* at 690 (emphasis omitted). Rather, "once removal is no longer reasonably foreseeable, continued detention is no longer

authorized by statute." *Id.* at 699. Courts facing these questions "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.*

A court measures reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* Courts must also "take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

"[T]o limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien has the burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. After meeting this burden, the burden shifts to the respondents to provide evidence to rebut the alien's showing. *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Federal regulations govern the issues in this habeas petition as well. 8 C.F.R. § 241.4(l)(2)(iii) gives the government discretion to end an OSUP "to enforce a removal order." Whether changed circumstances have arisen to permit removal are governed by 8 C.F.R. § 241.13. *See* § 241.4(b)(4). Section 241.13(a) "establishes special review procedures

for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at [Section] 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." Section 241.13(i)(2) of this regulation provides that "[ICE] may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

3.   Analysis

Huynh's nonfrivolous claims challenge whether the respondents have complied with the INA and its implementing regulations. Additionally, he challenges whether a significant likelihood of his removal in the reasonably foreseeable future exists. The Court considers these challenges below and finds that Huynh is properly detained. The Court also briefly considers several constitutional claims attached to Huynh's petition and concludes that they are frivolous.

> A.   **Even assuming that the respondents did not follow the procedural requirements of 8 C.F.R. § 241.13(i)(3), Huynh would not be entitled to habeas relief.**
>
>> i.   **Any error in failing to follow the procedural requirements of 8 C.F.R. § 241.13(i)(3) was harmless.**

Huynh contends that the respondents have failed to follow the INA by violating 8 C.F.R. § 241.13(i)(3). *See* Dkt. No. 1 ¶¶ 37–39. That provision provides that, "[u]pon revocation, the alien will be notified of the reasons for revocation of his or her release," that ICE "will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the alien an opportunity to respond to the reasons for revocation stated in

the notification," and that "[t]he alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she will be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3).  The regulation further provides that "[t]he revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id.*

The parties dispute whether any information or process was provided at the December 2025 check-in that resulted in Huynh's re-detention.  The respondents provide a notice—which they say was provided to Huynh (and indeed bears his signature)—as well as paperwork that Huynh completed at the time of re-detention.  *See* Dkt. Nos. 15 at 7; 16 at 11–18.  Huynh says he did not receive the notice prior to re-detention.  Dkt. No. 17-1 at 2.  He also challenges the clarity and accuracy of the notice and denies he ever received an interview.  *See* Dkt. Nos. 17 at 11–12; 17-1 at 2.

For the purpose of this analysis, the Court assumes that the respondents have yet[3] to follow the procedural requirements of Section 241.13(i)(3).  Harmless error applies in immigration cases generally.  *Rangel-Betancourt v. Barr*, 820 F. App'x 253, 255 (5th Cir. 2020) (citing *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010)); *Jalloh v. Garland*, No. 202117, 2023 WL 1859918, at *2 (4th Cir. Feb. 9, 2023) (citing *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004)) (further citation omitted).  The same is true for an agency's

---

[3] The Court notes that there is no particular timeline in which these procedures must happen other than "promptly" after re-detention.  The procedures all take place after the alien is detained, so they are not precursors to detention.  *See* 8 C.F.R. § 241.13(i)(3) (procedures arise "promptly after [an alien's] return to [ICE] custody").

procedural violations. *See City of Arlington v. FCC*, 668 F.3d 229, 243–44 (5th Cir. 2012). Under a harmless-error analysis, the party asserting error bears the burden of demonstrating prejudice. *Id.* at 243.

The facts here are on point with a recent decision of this Court, *Nguyen v. Noem*, 797 F. Supp. 3d 651. There, the petitioner challenged his detention process as a violation of Section 241.13(i)(3), which governs revocation of an OSUP for removal. Section 241.13(i)(3) requires "notice, an informal interview, and a limited opportunity to respond and present information regarding the changed circumstances." *Id.* at 663. Here, as in that case, Huynh has had the opportunity to obtain counsel, make a full argument to a federal court regarding his detention, submit evidence, and respond to the respondents' arguments. He has also had the opportunity to respond to the Court's reasoning in its order denying Huynh's request for a TRO. *See* Dkt. No. 11. As a result, Huynh "has clearly been given notice because the respondents have fully explained through briefing and declarations the basis for their conclusion." *Nguyen v. Noem*, 797 F. Supp. 3d at 663.

Because Huynh has received more than a full notice and an opportunity to be heard, even if the respondents failed to conform to the regulations set forth in Section 241.13, any error is now harmless in light of the procedures in this case. There is no basis, on these grounds, for ordering Huynh's immediate release. Moreover, because habeas is not backward-looking, the process provided now renders forward-looking relief separately inappropriate. *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention."); *Lane v. Williams*, 455 U.S. 624, 631 (1982) (explaining that where detainment or its

consequences have expired, a habeas petition is moot); *Nguyen v. Noem*, 797 F. Supp. 3d at 670 (same).

> ii. **Even if the respondents failed to abide by the requirements of Section 241.13(i)(3) and the error was harmful, a writ of habeas corpus would not be the appropriate remedy.**

Huynh urges that the respondents' alleged failure to follow their internal procedures is a due process violation that warrants his release. *See* Dkt. No. 17 at 12. But even assuming that ICE's detention of Huynh constitutes harmful error, a writ of habeas corpus would be an inappropriate remedy.

Habeas corpus "may not be used to correct mere irregularities or errors of law." *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959). "[T]he failure of officials 'to follow their own policies, without more, does not constitute a violation of due process,' making a writ of habeas corpus generally not available." *Nguyen v. Noem*, 797 F. Supp. 3d at 664 (quoting *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003)). For instance, in *Wilkinson v. Dotson*, the Supreme Court held that the petitioners had raised cognizable claims under 42 U.S.C. § 1983, but the Court warned that their holding "d[id] not mean immediate release from confinement or a shorter stay in prison; it mean[t] at most new eligibility review." 544 U.S. 74, 82 (2005). Thus, a petitioner may not use habeas to "fulfill . . . administrative requirements." *Nguyen v. Noem*, 797 F. Supp. 3d at 665; *see Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976) (explaining that habeas "cannot be used properly for any other purpose" than release "from unlawful imprisonment or custody").

B. ***Zadvydas* governs this habeas petition.**

In his motion for a TRO, Huynh argued that *Zadvydas* did not govern his case "because [he] was already released on an [OSUP] after being detained beyond the removal

period." Dkt. No. 10-1 at 4 (citing *Yan-Ling X. v. Lyons*, ___ F. Supp. 3d ___, No. 1:25-CV-1412, 2025 WL 3123793, at *5 (E.D. Cal. Nov. 7, 2025)). Instead, *Yan-Ling X.* asserts that "[a]n undue delay in removal for an individual alien beyond the typical removal period would naturally suggest that removal is unlikely." 2025 WL 3123793, at *5 (quotation omitted).

The Court rejected this argument in its order denying Huynh's TRO motion. Dkt. No. 11 at 5–9. Huynh's reply brief does not maintain that argument. But for completeness, the Court addresses the question once more. Huynh's argument suggests two conclusions, neither of which are acceptable.

The first is a line of reasoning adopted in *Tadros v. Noem* and other cases, which concludes that third-country removal is unlikely where years have elapsed since the last removal attempt. No. 25-CV-4108, 2025 WL 1678501, at *1 (D.N.J. June 13, 2025); *see Yan-Ling X.*, 2025 WL 3123793, at *5 (reaching the same conclusion).[4] Even if the Court were to accept Huynh's argument that his detention period should count his time in detention more than 25 years ago, that argument is unpersuasive. The Court previously addressed *Tadros* and similar cases in *Surovtsev v. Noem*, No. 1:25-CV-160, 2025 3264479 (N.D. Tex. Oct. 31, 2025). There, the Court declined to adopt *Tadros*'s reasoning, observing that the court in that case "fail[ed] to account for the new administration's well-known sea change" in removing individuals to third countries with far greater frequency than before, and that, "[i]n essence," such reasoning impermissibly "turn[s] back the clock to what could

---

[4] *See also Nguyen v. Scott*, 796 F. Supp. 3d 703, 721–22 (W.D. Wash. 2025) (*Nguyen v. Scott*); *Douglas v. Baker*, No. 25-CV-2243, 2025 WL 2997585, at *4 (D. Md. Oct. 24, 2025); *S.F. v. Bostock*, No. 3:25-CV-1084, 2025 WL 2841022, at *4 (D. Or. Oct. 7, 2025); *Zavvar v. Scott*, Civ. A. No. 25-2104, 2025 WL 2592543, at *7 (D. Md. Sept. 8, 2025).

have been done before January 20, 2025" without considering the changed circumstances that came after. 2025 WL 3264479, at *8 & n.9. For the same reasons, the Court is unpersuaded.

The second line of reasoning is even less persuasive. It is true that, as a period of detention continues without success, courts are rightly skeptical of the government's basis for continued detention and may demand additional evidence if the government fails to make good on its plans for removal. *E.g.*, *Agbada v. Ashcroft*, Civ. A. No. 02-30098, 2002 WL 1969660, at *1 (D. Mass. Aug. 22, 2002) (ordering removal or provision of removal confirmation within 90 days of the court's order). This Court has done so in other cases. *See Yaghoubi Yeganeh v. Warden, Bluebonnet Detention Facility*, No. 1:25-CV-121, Dkt. No. 18 at 2 (N.D. Tex. Nov. 12, 2025) (granting the respondents "a final opportunity" to detail third-country removal efforts after prolonged detention).

But the reality is that Huynh was detained only a few months ago. Dkt. No. 1 ¶ 25. It defies reality to construe his situation as otherwise, because the probable reasons for his re-detention—new travel documents or the potential for third-country removal—are only salient now. *Surovtsev*, 2025 WL 3264479, at *8 (rejecting a *Tadros* claim on similar grounds); *Nguyen v. Noem*, 797 F. Supp. 3d at 668–69 (noting the United States' new removal policy with Vietnam for aliens who entered before 1995). Even courts that adopt Huynh's position acknowledge that *Zadvydas* does not require continuous counting. *Nguyen v. Scott*, 796 F. Supp. 3d at 721–22; *Chen v. Holder*, No. 6:14-CV-2530, 2015 WL 13236635, at *2 (W.D. Nov. 20, 2015). Rather, these courts count time in detention all together to prevent the undesirable consequence of permitting the government to detain someone, "release[] him from detention, and then re-detain[] him again," creating an indefinite cycle

of detention that would violate the spirit of *Zadvydas*. *Nguyen v. Scott*, 796 F. Supp. 3d at 721–22 (collecting cases) (quoting *Sied v. Nielsen*, No. 17-CV-6785, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018)).

The fear that the government might abuse re-detention is understandable, but the Court is unpersuaded here. ICE is not the only governmental entity that engages in re-detention: state and federal courts routinely revoke pretrial release, parole, and supervised release.[5] Yet none of these are subject to a rising tide of evidentiary burdens. To the contrary: federal pretrial detention and revocation of supervised release are subject to evidentiary standards far more forgiving than that of their centerpiece—a trial conviction with proof beyond a reasonable doubt. *See United States v. Roberson*, 547 F. Supp. 3d 560, 563–64 (N.D. Tex. 2021) (applying, at most, a preponderance-of-the-evidence standard in pretrial release revocations); *Johnson v. United States*, 529 U.S. 694, 700 (2000) (applying preponderance standard to supervised-release revocations). It does not follow that American citizens can be subjected to a more relaxed standard of review for the re-detention process than the original detention process, yet aliens re-detained subject to an order of removal should receive a *higher* level of process by means of greater proof of the alien's likelihood of removal in the reasonably foreseeable future. *See Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982) (noting that aliens are typically due less process than citizens); *DHS v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020) (same).

Moreover, *Zadvydas* already provides a clear balance at the outer bounds of federal authority by ensuring aliens are only detained for "a period reasonably necessary to bring

---

[5] *E.g.*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (pretrial detention); *Morrison v. Johnson*, 106 F.3d 127 (5th Cir. 1997) (revocation of parole); *United States v. Tippens*, 39 F.3d 88 (5th Cir. 1994) (procedural rights for persons subject to revocation of supervised release).

about [the] alien's removal from the United States." 533 U.S. at 689. Both initial detention and re-detention are united in this purpose, and the limit—that neither may result in indefinite detention or detention without a significant likelihood of removal in the reasonably foreseeable future—already polices the government from unconstitutional action. *See Ladak v. Noem*, ___ F. Supp. 3d ___, No. 1:25-CV-194, 2025 WL 3764016, at *10 (N.D. Tex. Dec. 30, 2025) (reaching the same conclusion).

There may be cases where the government cannot show a reasonable likelihood of removal at the time of re-detention, fails to produce any such evidence, and engages in repeat or periodic re-detentions of an alien despite failing to cure these deficiencies. That narrowly defined scenario would raise the concern of an indefinite cycle of detention. "Not here: the Court will not force the respondents to forever bear the stain of failure from the [prior] removal attempt." *Id.* Thus, the Court declines to consider Huynh's detention through the lens of one detained for over one cumulative year and instead considers his re-detention in the context of his confinement since December 2025.

> **C. Because circumstances have changed and there is now a significant likelihood that Huynh may be removed to Vietnam in the reasonably foreseeable future, the respondents did not violate the INA, its regulations, or the Fifth Amendment.**

Huynh asserts that the respondents violated the INA, its implementing regulations, and the Due Process Clause of the Fifth Amendment when they re-detained him without the existence of changed circumstances. *See* Dkt. No. 1 ¶¶ 36–47. Because the alleged regulatory, statutory, and constitutional violations turn on the same question of law, the Court addresses them together and concludes that changed circumstances justify Huynh's detention. Thus, there is no violation of the INA, its implementing regulations, or the Fifth Amendment under the standards generally applicable under *Zadvydas*.

"But before turning to the merits of this discussion, the Court must consider the appropriate standards." *Nguyen v. Noem*, 797 F. Supp. 3d at 665. The operative language is that ICE "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). "This regulation gives the decision-making power primarily to ICE and not to this Court," such that the Court's review "is necessarily limited." *Nguyen v. Noem*, 797 F. Supp. 3d at 666. To prevail, the respondents need only establish "a significant likelihood that removal in the reasonably foreseeable future may occur," rather than "be certain or immediate." *Id.* at 666–67 (citing 8 C.F.R. § 241.13(i)(2)).

The facts in this case are straightforward. As the Court explained in *Nguyen v. Noem*, "[t]he current administration and the Socialist Republic of Vietnam have developed their relationship, allowing the current administration to more effectively remove Vietnamese nationals who entered the United States before 1995." 797 F. Supp. 3d at 671. Specifically, the two Nations signed a Memorandum of Understanding in 2020 "that created a process of removal for pre-1995 arrivals" like Huynh. *Id.* at 658. And while that memorandum is several years old, the Trump administration has begun to deport pre-1995 arrivals "at higher numbers than it has in the past." *Id.* at 668 (quotation omitted). The respondents further provide evidence that Huynh's travel document request, though still pending, will soon be submitted to the Vietnamese government. *See* Dkt. No. 16 at 7.

In response, Huynh provides little evidence and instead focuses his attack on the government's evidence. In his view, there are no changed circumstances because "[i]t is not entirely clear from the Respondents' vague declaration whether the request for a travel

document has even been submitted to the Vietnamese government"; "if it was, there is no further information as to when that request was submitted [and] whether the Vietnamese embassy responded"; "when a travel document could be expected (if ever)"; or "the likelihood that [Huynh], an individual who left Vietnam over 40 years ago without any Vietnamese identity documents would ever be issued a travel document." Dkt. No. 17 at 8. He also argues that the government's data cannot point to a significant likelihood because it does not reveal the number of times the government has applied for removal in recent months and failed. *See id.* at 9.

These objections are not without some relevance, but the Court is unpersuaded. First, the Court disagrees that the respondents' statements are inscrutable. The respondents quite clearly state that, as of mid-January, a travel document request was complete and awaiting review. Dkt. No. 16 at 7. That means—despite Huynh's entry into this country without identity documents—ICE has been able to compile information sufficient in their view to submit to the Vietnamese government. And, as a result, ICE has concluded that the information submitted is enough for the Vietnamese government to accept Huynh's return.

Moreover, the Court is more than capable of surmising the statistics from the evidence before it and the public record. "According to statistics kept by DHS, in fiscal year 2024, there were 58 persons removed to Viet Nam in accordance with removal orders. In fiscal year 2025[,] there were 699 persons removed, and 327 were pre-1995 cases." *Id.* The respondents also indicate that 121 Vietnamese nationals were removed to third countries in 2025. *Id.* As of just a few months ago, there were an "estimated 8,000 to 10,000 pre-95 immigrants living in the United States with final removal orders." *Nguyen v. Noem*, 797 F. Supp. 3d at 668. Assuming that about half of the latter category are pre-1995 arrivals, that

means the Trump administration has deported nearly 4% of Vietnamese nationals subject to removal orders.  That is almost one in twenty individuals, and that figure does not even account for the number of individuals who are subject to removal orders but have neither been detained nor are subject to active removal efforts.[6]

But the more important point is this: the respondents are not required to refrain from detaining Hyunh "until they [have] travel documents, a flight planned, or even applied for travel documents."  *Id.* at 669.  That is "because this burden is inconsistent with the deference afforded to the respondents and the plain text that, for detention to be appropriate, there be merely—in ICE's determination—'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'"  *Id.* (quoting 8 C.F.R. § 241.13(i)(2)).  Here, ICE has compiled a travel document for Vietnam, despite Huynh's decades-long absence from that country and despite his personal lack of documents to prove his identification.  What Vietnam does and does not require is a matter to which the Executive has better knowledge.  Huynh's skepticism does not prevent the respondents from engaging in the immigration process to secure his removal.  Thus, while Huynh's removal "is neither certain nor guaranteed," there is a significant likelihood that he will be removed

---

[6] Huynh also objects that this data (at least when it does not outright disfavor his removal) is "generalized" and insufficient.  Dkt. No. 17 at 9.  But as the Court explained in *Nguyen v. Noem*, "there is no reason that a broad change in circumstances that applies to a broad group of aliens cannot have the effect of changing the circumstances of each of those particular aliens and thus let ICE determine that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  797 F. Supp. 3d at 666.

to Vietnam in the reasonably foreseeable future. *Ladak*, 2025 WL 3764016, at *10 (quoting *Surovtsev*, 2025 WL 3264479, at *8).[7]

### D. Huynh's past history of compliance does not warrant his release.

In addition to his objection to the probability of his removal, Huynh makes reference to the discretionary release factors outlined in 8 C.F.R. § 241.4(f). Dkt. No. 17 at 3. He also references the traditional flight-risk and public-safety concerns of civil detention. Dkt. No. 1 ¶¶ 32–33. To the extent Huynh argues that his release is warranted because, removal likelihood notwithstanding, he is neither a flight risk nor danger to the community, his claim is unpersuasive. As the Court explained in *Ladak*, "[b]ecause 'the *Zadvydas* standard *is* due process,' [an alien] is deprived of no liberty by his detention anticipating removal consistent with the protections set forth" in *Zadvydas*, even if he is not a flight risk or danger to the community. 2025 WL 3764016 at *11 (quoting *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (emphasis in original)).

### E. Huynh's remaining claims are frivolous.

Finally, Huynh's complaint inexplicably challenges his detention under "the First, Fourth . . . and Fourteenth Amendments to the Constitution." Dkt. No. 1 ¶ 16. In the Court's TRO order, the Court took notice of these additional claims and declined to address them as undeveloped. Dkt. No. 11 at 2 n.1. Huynh's reply brief neglects to address these

---

[7] Huynh's detention is warranted based on his potential removal to Vietnam alone. However, the Court notes that the respondents are considering third-country removal if they are unable to remove Huynh to Vietnam. *See* Dkt. No. 15 at 2. While Huynh asserts that no one has indicated to him that third-country removal is a possible alternative to removal to Vietnam (Dkt. No. 17 at 8), that is immaterial. For the same reasons noted in *Ladak*, the alternative of third-country removal would support Huynh's detention even if his removal to Vietnam in the reasonably foreseeable future were less than significantly likely. 2025 WL 3764016, at *10.

arguments. *See generally* Dkt. No. 17. Nonetheless, they are part of his petition. The Court thus addresses these claims.

In short, because Huynh does not address any of these claims in his petition, they are frivolous. Nowhere does Huynh identify speech, religious exercise, an assembly burdened or denied, or any other sort of conduct that could implicate the First Amendment. The same goes for his Fourth Amendment claim. And his Fourteenth Amendment claim is inexplicable because the plain text of Section One (to which Huynh presumably refers) does not restrict the authority of the federal government in any way whatsoever, minus its citizenship clause.[8]

### F.   A hearing is not necessary.

"When the district court has sufficient facts before it to make an informed decision on the merits of the habeas petitioner's claim, it does not abuse its discretion in failing to conduct an evidentiary hearing . . . ." *Gallegos v. Quarterman*, 265 F. App'x 300, 303 (5th Cir. 2008) (citation modified). An evidentiary hearing is required only when the federal court lacks sufficient undisputed facts to make an informed decision. *Barrientes v. Johnson*, 221 F.3d 741, 770 (5th Cir. 2000). As the analysis above shows, no hearing is necessary here.

First, the dispute regarding the INA, its implementing regulations, and the Fifth Amendment does not warrant a hearing. As explained above, even assuming that the respondents failed to abide by the procedural requirements of the INA, any error was

---

[8] To the extent that Huynh perceives a First, Fourth, or Fourteenth Amendment claim that is not addressed by the Court's analysis above, the Court declines to consider any such claim. *See Higareda-Cano v. Noem*, No. 1:25-CV-225, 2026 WL 274495, at *11 n.12 (N.D. Tex. Jan. 30, 2026) (declining to analyze claim for habeas relief under Section 2241 that is not clearly articulated).

harmless.  And even if it were harmful error, a writ of habeas corpus ordering his release would not be the appropriate remedy.  Second, the Court has found that, on the current record, the odds of removal to Vietnam are such that Huynh is significantly likely to be removed in the reasonably foreseeable future.  Thus, a hearing is not necessary or appropriate to determine whether changed circumstances make Huynh's removal significantly likely in the reasonably foreseeable future.

4.  **Conclusion**

The Court recognizes that Huynh's removal is not guaranteed.  But the record here is clear: the respondents are actively working to secure his removal against a backdrop of rising deportation efforts to Vietnam.  Huynh's skepticism is no substitute for counterevidence, and what little evidence he offers does not persuade.  For the foregoing reasons, the Court denies Huynh's petition for a writ of habeas corpus.  Dkt. No. 1.

So ordered on March 16, 2026.

                                             _____
                                             JAMES WESLEY HENDRIX
                                             UNITED STATES DISTRICT JUDGE